ORFINGER, J.
 

 Rameses, Inc., d/b/a Cleo’s, and attorney Steven G. Mason (collectively “Cleo’s”) appeal from an adverse summary judgment entered in their action seeking disclosure of several videotapes generated by the Metropolitan Bureau of Investigation (MBI) as part of a 2004 undercover investigation in Orange County known as “Operation Overexposed.” Jerry L. Demings, the Sheriff of Orange County, in his official capacity and as the records custodian of
 
 *420
 
 the MBI, declined to release the tapes unless the faces of the undercover officers were obscured. The issue both below and on appeal is a narrow one. When public records, otherwise exempt from disclosure under section 119.071, Florida Statutes (2008), have been disclosed during discovery to a criminal defendant, is the government precluded from asserting applicable statutory exemptions from disclosure in a subsequent public records action? We answer in the negative and affirm.
 

 The MBI conducted a criminal investigation at Cleo’s, an adult nightclub, during which undercover law enforcement officers posed as patrons. At the completion of the operation, several dancers were arrested and charged with public nudity, exposure of sexual organs and “straddle dancing.” Some of the illegal conduct was videotaped and depicted the faces of the undercover officers.
 
 [1]
 
 In the ensuing criminal proceedings, the defendant dancers participated in discovery under Florida Rule of Criminal Procedure 3.220, and received copies of the unredacted tapes.
 
 [2]
 
 The criminal prosecutions against the dancers concluded in 2005, and the related administrative charge against Cleo’s was resolved shortly thereafter. After the criminal and administrative litigation ended, Cleo’s, represented by Mr. Mason, sought release of the videotapes by submitting a public records request to the Sheriff.
 
 [3]
 
 The Sheriff offered to provide redacted tapes. Cleo’s objected to the redaction of these recordings, and brought the instant action, seeking unredacted copies.
 

 The Sheriff filed a motion for summary judgment, conceding that the 2004 recordings are public records and are not relevant to any active criminal investigation. However, relying on several exemptions from disclosure relating to law enforcement personnel and surveillance techniques contained in section 119.071, the Sheriff argued that the faces of the MBI agents should be obscured. In its opposing motion for summary judgment, Cleo’s argued that since unredacted tapes had been released to the defendant dancers during discovery in the criminal proceedings, the exemptions no longer applied. The trial court granted summary final judgment in favor of the Sheriff, concluding that the Sheriff was authorized to “obscure the faces” of all the undercover MBI officers prior to producing the recordings pursuant to the exemptions contained in section 119.071(4)(c) and (4)(d). Cleo’s appeals, arguing that the exemptions do not control and that unredacted production of the tapes is required by law.
 

 A trial court’s decision to grant a motion for final summary judgment, which poses a pure question of law, is reviewed de novo.
 
 Major League Baseball v. Morsani,
 
 790 So.2d 1071, 1074 (Fla.2001). The issue in this public records litigation involves a matter of statutory construction and is a question of law.
 
 See Wagner v. Orange County,
 
 960 So.2d 785 (Fla. 5th DCA 2007) (involving public records litigation).
 

 
 *421
 
 The Florida Constitution provides that the public shall have full access to government records, though exemptions may be enacted by a two-thirds vote of each house of the Legislature. Art. I, § 24, Fla. Const. Chapter 119, Florida Statutes, known as the Public Records Act, implements this policy of open public records by providing that “[i]t is the policy of this state that all state, county and municipal records shall be open for personal inspection by any person.” § 119.01(1), Fla. Stat. (2008). The motivation or purpose of the person seeking disclosure of public records is irrelevant.
 
 Lorei v. Smith,
 
 464 So.2d 1830, 1332 (Fla. 2d DCA 1985). Rather, the right of access to public records is virtually unfettered, save for statutory exemptions designed to achieve a balance between an informed public and the ability of the government to maintain secrecy in the public interest.
 
 Id.
 

 In light of the policy favoring disclosure, the Public Records Act is construed liberally in favor of openness, and exemptions from disclosure are construed narrowly and limited to them designated purpose.
 
 City of Riviera Beach v. Barfield,
 
 642 So.2d 1135, 1136 (Fla. 4th DCA 1994).
 
 Accord WFTV, Inc. v. Sch. Bd. of Seminole,
 
 874 So.2d 48, 53 (Fla. 5th DCA 2004). The government has the burden to demonstrate the applicability of a statutory exemption.
 
 Weeks v. Golden,
 
 764 So.2d 633, 635 (Fla. 1st DCA 2000).
 

 The Sheriff contends that the identities of the undercover law enforcement personnel must be obscured under section 119.071(2)(d), Florida Statutes (2008), which exempts “[a]ny information revealing surveillance techniques or procedures or personnel section 119.071(4)(c), Florida Statutes (2008), which exempts “[a]ny information revealing undercover personnel of any criminal justice agency and/or section 119.071(4)(d)l.a., which exempts “[t]he home addresses, telephone numbers, social security numbers, and photographs of active or former law enforcement personnel.... ” Cleo’s contends that while these exemptions may have been applicable to the videotapes at issue, the exemptions are now moot or were waived when the recordings were disclosed, without redaction, to the criminal defendant dancers during discovery. The Sheriff disagrees, arguing that such disclosure does not itself waive all public record exemptions or confidentiality considerations.
 

 In
 
 Post-Newsweek Stations, Florida Inc. v. Doe,
 
 612 So.2d 549, 551 (Fla.1992), the supreme court discussed the interplay between rule 3.220 and the public records law:
 

 Florida law clearly expresses that it is the policy of this state that all government records, with particular exemptions, shall be open for public inspection. § 119.01. Subsection 119.011(3)(e) provides an exemption for
 
 criminal investigative information
 
 developed for the prosecution of a criminal defendant. Pursuant to the statute,
 
 such information
 
 will not be accessible to the public until the information is given or required by law or agency rule to be given to the accused. § 119.011(3)(c)(5). Rule 3.220 requires the state to turn over the discovery information to the defendant. In
 
 Florida Freedom Newspapers, Inc. v. McCrary,
 
 520 So.2d 32 (Fla.1988), we stated that, once the state gives the requested information to the defendant, pretrial discovery information attains the status of a public record.
 

 (emphasis added). However, and perhaps, most significant to the issue presented here, the court went on to say, “we emphasize that the public does not have a universal right to all discovery materials.”
 
 Id.
 
 at 553. This may be premised, in part, on
 
 *422
 
 the definition of “criminal investigative information” found in section 119.011(3)(a) and (b), which specifically excludes “documents given or required by law ... to be given to the person arrested.... ”
 

 Our sister courts’ decisions in
 
 Salcines v. Tampa Television,
 
 454 So.2d 639 (Fla. 2d DCA 1984), and
 
 Christy v. Palm Beach County Sheriff’s Office,
 
 698 So.2d 1365 (Fla. 4th DCA 1997), demonstrate the continued viability of the exemptions contained in section 119.071 to protect the identity of undercover law enforcement personnel, even if that information may already be public. In
 
 Tampa Television,
 
 the trial court ordered the disclosure pursuant to the public records law of a subpoena, which on its face purported to identify confidential informants. The second district reversed the order of disclosure, stating as follows:
 

 In considering the exemptions granted in section 119.07(3)(e), we have concluded that neither the statute nor case law dictates that the exemptions from disclosure relate to confidential informants or sources who are currently being used as such, or whose identity has not previously been disclosed. We therefore conclude that it matters not that the informants or sources are no longer active or may have, through other sources, been identified as such. Section 119.07(3)(e) [now subsection (3)(c) ] applies the exemptions to any information revealing identity. It does not specify
 
 not previously identified,
 
 nor
 
 current
 
 “confidential informants or sources.”
 

 454 So.2d at 641.
 

 In
 
 Chñsty,
 
 the fourth district agreed with
 
 Tampa Television,
 
 ruling that the fact the names of a confidential informant and undercover law enforcement personnel involved in an arrest were already known, did not destroy the exemption from disclosure in a public records action. In that case, the court noted that the records were generated in a criminal investigation conducted thirteen years earlier and that there was nothing to indicate the information was “active.” Notwithstanding, the court rejected Christy’s claim that because he already knew the identity of the confidential informant and undercover Sheriffs personnel, the exemption for such information was inapplicable. Rather, the appellate court found that Christy was entitled to a redacted version of the records, adding that “[although the redaction of the identities of the confidential informant and [the Sheriffs] undercover personnel may frustrate [Christy’s] purpose in requesting the records, this is all that [Christy] is entitled to under the Public Records Act.” 698 So.2d at 1368.
 
 [4]
 

 
 *423
 
 Here, the defendant dancers may have been entitled to unredacted versions of the surveillance recordings in preparing them defenses under rule 3.220. However, we see no reason why such forced disclosure should transform otherwise exempt material into public information when the specific exemptions contained in section 119.071 are considered.
 
 Accord Livistrom v. Ladenburg,
 
 110 Wash.App. 133, 39 P.3d 351 (2002) (holding prosecutor’s compliance with mandatory discovery in criminal proceeding by providing documents to defense did not make otherwise privileged public records open to examination). To conclude otherwise would effectively allow the rules of criminal procedure, which are enacted to govern criminal discovery, to trump legislatively approved exemptions from disclosure under the Public Records Act. Such a result would impinge on the Legislature’s prerogatives.
 
 [5]
 
 Merely because exempt information has been revealed to a criminal defendant during discovery does not extinguish the state’s legitimate interest, as reflected in the exemptions asserted by the Sheriff, from public disclosure of such information.
 

 We hold that the disclosure to a criminal defendant during discovery of unredacted versions of undercover police surveillance recordings does not destroy, in a public records context, the exemptions contained in section 119.071 for information relating to the identity of undercover law enforcement personnel. As a result, we conclude that the trial court was correct in ordering that the faces of the undercover officers be obscured prior to release of the surveillance recordings.
 

 AFFIRMED.
 

 PALMER and EVANDER, JJ, concur.
 

 [1]
 

 . Videotape recordings fall within the ambit of chapter 119, Florida Statutes.
 
 See
 
 § 119.011(12), Fla. Stat. (2008) (defining public records to include sound recordings, films, photographs and tapes).
 

 [2]
 

 . In making its decision, the trial court assumed, without deciding, that unredacted tapes had been released to the defendant dancers.
 

 [3]
 

 .Cleo’s earlier lawsuit against the MBI, seeking the tapes, was dismissed based on a determination that the MBI was not a legal entity capable of being sued.
 
 See Ramese's, Inc. v. Metro. Bureau of Investigation,
 
 954 So. 2d 703 (Fla. 5th DCA 2007).
 

 [4]
 

 . As Cleo’s argues, several cases hold that some public records exemptions no longer apply after the information has been disclosed under the rules of discovery. For instance, an exemption exists for “active criminal intelligence information” and "active criminal investigative information.” § 119.071(2)(c), Fla. Stat. (2008);
 
 see
 
 § 119.071 (2)(h), Fla. Stat. (2008) (listing limited class of “criminal intelligence information” and “criminal investigative information” that is confidential and is not subject to public records disclosure). However, this exemption does not apply to "documents given or required by law or agency rule to be given to the person arrested," section 119.01 l(3)(c)5., Florida Statutes (2008), or to information for which disclosure was previously required under the rules of discovery.
 
 See Staton v. McMillan,
 
 597 So.2d 940, 941 (Fla. 1st DCA 1992);
 
 Tribune Co. v. Public Records,
 
 493 So.2d 480 (Fla. 2d DCA 1986). Nor does it apply to information that has already been made public since there is "an end to secrecy about those documents.”
 
 Downs v. Austin,
 
 522 So.2d 931, 935 (Fla. 1st DCA 1988) (quoting
 
 Satz v. Blankenship,
 
 407 So.2d 396, 398 (Fla. 4th DCA 1981)); see
 
 Bludworth v. Palm Beach Newspapers, Inc.,
 
 476 So.2d 775 (Fla. 4th DCA 1985). Thus, the exemption does not apply to information previously made available at a public hearing.
 
 Staton,
 
 597 So.2d at 941;
 
 Downs,
 
 522 So.2d
 
 *423
 
 at 935. Nevertheless, as the Sheriff argues, these decisions are factually and legally distinguishable as they involve the exemption for either "active criminal intelligence information’' or "active criminal investigative information,” which are not the exemptions at issue. The material given to the defendant dancers was not "active” or "criminal intelligence information” or "criminal investigative information.”
 
 See
 
 § 119.01 l(3)(c)5. & 6.(d), Fla. Stat. (2008).
 

 [5]
 

 . This conclusion is further buttressed by the fact that although a criminal defendant may learn the identity of undercover law enforcement personnel through discovery, the government may, in limited circumstances, prevent public disclosure of this information at trial by, for instance, excluding the public from the portion of the trial where such personnel are testifying.
 
 See Waller v. Georgia,
 
 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984);
 
 Brown
 
 v.
 
 Artuz,
 
 283 F.3d 492 (2d Cir.2002) (holding that legitimate, demonstrated safety concerns of undercover police officer constitute recognized interest that may override defendant’s Sixth Amendment right to public trial).