724 So.2d 567 (1999)
HALIFAX HOSPITAL MEDICAL CENTER, Petitioner,
v.
NEWS-JOURNAL CORPORATION, Respondent.
No. 92,047.
Supreme Court of Florida.
January 21, 1999.
Harold C. Hubka of Black, Crotty, Sims, Hubka, Burnett, Birch & Samuels, L.L.P., Daytona Beach, and Frederick W. Leonhardt, Jack A. Kirschenbaum, and G. Robertson Dilg of Gray, Harris & Robinson, P.A., Orlando, for Petitioner.
Jonathan D. Kaney, Jr. and Jonathan D. Kaney, III, of Cobb Cole & Bell, Daytona Beach, for Respondent.
Richard A. Harrison and Tabatha A. Liebert of Allen, Dell, Frank & Trinkle, P.A., Tampa, for Florida Health Sciences Center, Inc., Amicus Curiae.
William R. Scherer and Vanessa A. Reynolds of Conrad & Scherer, Fort Lauderdale, for North Broward Hospital District, Amicus Curiae.
George K. Rahdert and Patricia Fields Anderson of Rahdert, Anderson, McGowan & Steele, P.A., St. Petersburg, for Times Publishing Company d/b/a The St. Petersburg Times, Amicus Curiae.
Robert Rivas of Rivas & Rivas, Boca Raton, for The First Amendment Foundation, The Florida Society of Newspaper Editors, Florida Today, The Orlando Sentinel, The *568 Palm Beach Post and The Sun-Sentinel, Amicus Curiae.
WELLS, J.
We have for review Halifax Hospital Medical Center v. News-Journal Corporation, 701 So.2d 434 (Fla. 5th DCA 1997), which expressly declared unconstitutional section 395.3035(4), Florida Statutes (1995), and in which the district court certified the following question to be of great public importance:
IS THE EXCEPTION CONTAINED IN § 395.3035(4), FLORIDA STATUTES, UNCONSTITUTIONAL UNDER THE PROVISIONS OF ARTICLE I, § 24(b) OF THE FLORIDA CONSTITUTION?
Id. at 437. We have jurisdiction. Art. V, § 3(b)(1), (4), Fla. Const. We rephrase the question as follows:
Is the exemption contained in section 395.3035(4), Florida Statutes (1995), constitutional under the provisions of article I, section 24(b) and (c) of the Florida Constitution?
We answer the question as rephrased in the negative and affirm the decision of the district court for the reasons stated herein.
News-Journal Corporation (Publisher), publisher of a daily newspaper in Volusia County, brought an action for declaratory and injunctive relief against codefendants Halifax Hospital Medical Center, which controls and operates public hospital facilities in Daytona Beach, and Southeast Volusia Hospital District, which controls and operates a public hospital facility in New Smyrna Beach. Each of these hospital authorities is supported by ad valorem real property taxes levied annually by the defendant boards pursuant to special taxing districts of the State of Florida. The lawsuit challenged the legality of a series of closed meetings in late 1995 and early 1996 in which the defendants negotiated the terms of an agreement to create an interagency holding company through which the defendants' boards would merge many aspects of their operations. In the circuit court, Publisher contended (1) that the closure of the meetings violated constitutional and statutory requirements for public meetings of public bodies;[1] (2) that the transcript and other public records generated at the meetings must be disclosed under the Public Records Law;[2] and (3) that the proposed interlocal agreement of affiliation was void ab initio because it was created in illegally closed meetings. The defendants conceded that they were subject to section 286.011, Florida Statutes (1995), (Sunshine Law) but contended that their closed meetings were covered under an exemption to the Sunshine Law, which provides in relevant part:
(4) Those portions of a board meeting [of a governing board of a public hospital] at which the written strategic plans, including written plans for marketing its services, are discussed or reported on are exempt from the provisions of s. 286.011 and s. 24(b), Art. I of the State Constitution. All portions of any board meeting which are closed to the public shall be recorded by a certified court reporter. The reporter shall record the times of commencement and termination of the meeting, all discussion and proceedings, the names of all persons present at any time, and the names of all persons speaking. No portion of the meeting shall be off the record. The court reporter's notes shall be fully transcribed and maintained by the hospital records custodian within a reasonable time after the meeting. The transcript shall become public 3 years after the date of the board meeting.
§ 395.3035(4), Fla. Stat. (1995).
The legislature justified the exemption in relevant part as follows:
[I]t is a public necessity that portions of a public hospital's governing board meetings be closed when confidential contracts, contract negotiations, or strategic plans are discussed. If such meetings are not closed, critical confidential information regarding contracts, contract negotiations, and strategic plans regarding, for example, growth opportunities, would be revealed, making it exceptionally difficult, if not impossible, for a public hospital to effectively compete in the marketplace against private *569 hospitals, whose records and meetings are not required to be open to the public.
Ch. 95-199, § 2, at 1813, Laws of Fla.
After a trial on October 24, 1996, the circuit court found that the statutory exemption, section 395.3035(4), Florida Statutes (1995), was unconstitutional, and thus the hospitals' agreement to create an interagency holding company was void ab initio because it was created during illegal meetings. News-Journal Corp. v. Halifax Hosp. Med. Ctr., No. 96-31937-CICI (Fla. 7th Cir.Ct. Nov. 1, 1996) (Final Judgment). The court also found that transcripts of the closed meetings and other records generated during those meetings were public records subject to disclosure under chapter 119, Florida Statutes (1995). Id.
In its constitutional analysis, the circuit court examined the exemption under the requirement that an exemption to article I, section 24(b) of the Florida Constitution "shall state with specificity the public necessity justifying the exemption and shall be no broader than necessary to accomplish the stated purpose of the law." Art. I, § 24(c), Fla. Const. (emphasis added.) The court determined that the stated purpose of the exemption was to protect from disclosure "critical confidential information" which, if revealed, would make it "difficult, if not impossible," for public hospitals to compete with private hospitals. The court found that this stated purpose was "sufficiently specific" in stating the public necessity justifying the exemption. However, the court also determined that not all aspects of written strategic plans are critical and confidential. Thus, the court found that the statutory exemption of any discussion of a hospital's strategic plan was "overbroad on its face" and therefore did not comply with the requirement under article I, section 24(c) of the Florida Constitution that an exemption be "no broader than necessary to accomplish the stated purpose of the law." The circuit court further found that a judicial narrowing of the exemption would not cure the constitutional defect because the legislature had provided no guidance within the exemption as to what constitutes "critical and confidential information" and that such a finding is fundamentally legislative rather than judicial.
Halifax Hospital Medical Center (Halifax) appealed, and the Fifth District affirmed but certified to this Court the question as to constitutionality of the statutory exemption. Halifax, 701 So.2d at 437. In its opinion, the district court held that the statutory exemption is overbroad primarily because "[t]here is no definition of, and therefore no limitation on, what can be included in a strategic plan." Id. at 436. The district court agreed with the trial court that "an exempt strategic plan should be limited to only that portion of the strategic plan which contains critical confidential information as set out in the justification." Id. Contrary to the trial court's reasoning, the district court suggested that saving the exemption would be possible through a judicial narrowing construction of the term "strategic plan." Id. However, the court declined to supply such a construction and stated that doing so would not affect the result in this case because joint meetings between competitors do not qualify for exemption from disclosure under any reading of the exemption. Id.
Halifax contends in this Court that the challenged statutory exemption, section 395.3035(4), Florida Statutes (1995), meets the constitutional standard under article I, section 24(c), in that it was adopted for a stated public purpose in response to a specified public necessity and was drafted as narrowly as possible to achieve that purpose. Halifax argues here that the legislature intended to exempt any written strategic plan of a public hospital in its entirety from public disclosure and that the term strategic plan is well understood and does not need to be expressly defined in the exemption.
We agree with the courts below that the statutory exemption does not meet the exacting constitutional standard of article I, section 24(c), of specificity as to stated public necessity and limited breadth to accomplish that purpose and is therefore facially unconstitutional. The exemption allows the board of directors of a public hospital to close the portions of their meetings "at which the written strategic plans, including written plans for marketing its services, are discussed *570 or reported on." § 395.3035(4), Fla. Stat. (1995). The statute itself contains neither a definition of "strategic plans" nor a justification for the breadth of the exemption. "Strategic plans" obviously can cover a broad range of topics relating to the operation of facilities, including personnel, purchasing, budgeting, and general administration. The exemption's justification explains only that disclosure of critical confidential information regarding strategic plans would make it "exceptionally difficult ... for a public hospital to effectively compete in the marketplace against private hospitals." Ch. 95-199, § 2, at 1813, Laws of Fla. This legislative justification also includes no definition of "strategic plan" or "critical confidential information." As the circuit court correctly stated:
The evidence in this case thus showed and the Court finds that not all aspects of written strategic plans are critical and confidential..... By creating an exemption for any and all discussion of the strategic plan, the legislature has created a categorical exemption which reaches far more information than necessary to accomplish the purpose of the exemption. All discussion of strategic plans is made secret solely to protect that part of the discussion which pertains to critical confidential information. This is facial overbreadth.
Final Judgment at 11-12.
Alternatively, Halifax asks us to save the statutory exemption by defining terms we might construe as overbroad. In support of this argument, Halifax cites State v. Stalder, 630 So.2d 1072, 1077 (Fla.1994), and Firestone v. News-Press Publishing Co., 538 So.2d 457, 459-60 (Fla.1989), in which this Court preserved the constitutionality of statutes by adopting narrowing constructions of terms that otherwise rendered the statute overbroad. However, in both Stalder and Firestone, we could find within the challenged statutes the appropriate substantive definitions of terms that otherwise would have rendered the statutes overbroad, and thus those two cases are distinguishable.
It is true that, whenever possible, a statute should be construed so as not to conflict with the constitution. Doe v. Mortham, 708 So.2d 929, 939 (Fla.1998); Stalder, 630 So.2d at 1076. However, a court's discretion to adopt a narrowing construction should be exercised with restraint. Stalder, 630 So.2d at 1077-78 (Kogan, J., concurring). In State v. Globe Communications Corporation, 648 So.2d 110 (Fla.1994), we declined to apply a saving construction to a statute mandating criminal sanctions for identifying a victim of a sexual offense in any instrument of mass communication. Id. at 110. As we did in Globe, we find in this case that we cannot move into the legislature's province by making the factual determination that would bring this statutory exemption within constitutional boundaries. A court may not have the fact-finding machinery to enable it to authoritatively construe a statute and supply a saving construction. Brown v. State, 358 So.2d 16, 20 (Fla.1978).
As noted by the circuit court below, this exemption cannot be judicially narrowed because the record lacks findings to define information that is "critical and confidential" and thus within the stated purpose of protecting competitive secrecy. In this case, we do not have before us the relevant information to define "critical confidential information" or "strategic plans" for which disclosure would harm the business interests of the hospital. Moreover, in enacting exemptions to Florida's public disclosure laws, the legislature has an express constitutional obligation to tailor such an exemption so that it is no broader than necessary to accomplish the exemption's stated purpose. Thus, the task of enacting a more limited statutory exemption appropriately belongs to the legislature in this case. For these reasons, we decline to afford a narrowing construction to the language of the statutory exemption.
Accordingly, we answer the rephrased certified question in the negative and hold that section 395.3035(4), Florida Statutes (1995), is unconstitutional under article I, section 24(b) and (c) of the Florida Constitution. We approve the decision of the Fifth District Court of Appeal.
It is so ordered.
*571 HARDING, C.J., SHAW, ANSTEAD and PARIENTE, JJ., and KOGAN, Senior Justice, concur.
OVERTON, Senior Justice, concurs in part and dissents in part with an opinion.
OVERTON, Senior Justice, concurring in part and dissenting in part.
I concur with the majority's conclusion that the meetings and records at issue should have been open to the public. I disagree with the holding that section 395.3035(4), Florida Statutes (1995), is unconstitutional under the provisions of article I, section 24(b) and (c) of the Florida Constitution, because I find that the phrase "strategic plan, including written plans for marketing its services" as contained in that statute, was never intended to exempt merger discussions between two public entities. In my view, the term "strategic plan" refers to operational business decisions necessary to market the services of public hospitals and afford them the opportunity to compete with private for-profit hospitals. I do not believe that this term is overbroad when it is construed to mean the type of activities necessary to allow the hospital to compete with for-profit hospitals. To me, an interlocal agreement with another public entity involves a totally different subject matter. Accordingly, I would find that meetings between public entities regarding interlocal agreements are not the type of meetings that the legislature intended to exempt under section 395.3035(4). Consequently, I agree that the meetings and records at issue were open to the public; I disagree that the statute is unconstitutional.
NOTES
[1] § 286.011, Fla. Stat. (1995); Art. I, § 24(b), Fla. Const.
[2] Ch. 119, Fla. Stat. (1995).