# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D17-2493

_____

STATE OF FLORIDA, DEPARTMENT
OF FINANCIAL SERVICES, and
JIMMY PATRONIS,

     Appellants,

     v.

DANAHY & MURRAY, P.A., and
BENNETT DENNISON, PLLC,

     Appellees.

_____

On appeal from the Circuit Court for Leon County.
Charles W. Dodson, Judge.

April 20, 2018

ROBERTS, J.

The defendants/appellants, Department of Financial Services and Chief Financial Officer Jimmy Patronis (collectively "the Department"), appeal an order from the Second Judicial Circuit Court, in and for Leon County, declaring sections 624.23(1)(b)7. and (2), Florida Statutes (2016), unconstitutional. The Department argues that under the two-pronged test in Article I, section 24(c) of the Florida Constitution and *Halifax Hospital Medical Center v. News-Journal Corp.*, 724 So. 2d 567, 569 (Fla. 1999), section 624.23 is constitutional. We agree that the statute is constitutional and reverse the order on appeal.

## *Factual Background*

Section 624.23 creates a public records exemption for certain information held by the Department under the Florida Insurance Code.[1] The plaintiffs/appellees are two law firms (collectively "the plaintiffs") who routinely submitted public records requests seeking information about participants in two programs that the Department oversees under the Insurance Code – a mediation program for residential property insurance claim disputes and "neutral evaluations" of disputed sinkhole insurance claims. *See* §§ 627.7015 & 627.7074, Fla. Stat. (2016). To participate in either program, an individual policyholder or an insurer submits a request to the Department providing the policyholder's name, the insurer's name, as well as other personal identifying information about the policyholder. The plaintiffs sought this type of personal identifying information.

For many years, the Department provided the plaintiffs with spreadsheets including the names of policyholders, their address, phone number, email address, type of insurance, reason for contacting the Department, and insurance company information. In April 2016, the Department determined it was incorrectly interpreting section 624.23, which it concluded created a public records exemption for this type of personal identifying information.

Section 624.23(2) provides,

> Personal financial and health information held by the department or office relating to a consumer's complaint or inquiry regarding a matter or activity regulated under the Florida Insurance Code . . . are confidential and exempt from s. 119.07(1) and s. 24(a), Art. I of the State Constitution[.]

---

[1] Section 624.23 also exempts information regulated by section 440.191, Florida Statutes (2016), which is not relevant to the issues in this appeal.

2

"Personal health and financial information" is defined to include "[t]he existence, identification, nature or value of a consumer's [2] interest in any insurance policy, annuity contract, or trust." § 624.23(1)(b)7., Fla. Stat. (2016). The Department asserted that information identifying a specific consumer in connection with an insurance policy was confidential and exempt under sections 624.23(1)(b)7. and (2). Thereafter, it declined to produce personal identifying information to the plaintiffs.

The plaintiffs each filed suit, the cases were consolidated, and all parties moved for summary judgment on the Department's interpretation of section 624.23. Before summary judgment was entered, the Department conceded that it had initially applied section 624.23 in an overly broad manner and agreed to provide consumer names and addresses where requests for mediation or neutral evaluation came from an insurance company, but still refused to release the information when the request to participate came from a consumer.

The trial court granted summary judgment in favor of the Department, finding its interpretation was correct. Having looked at the legislative intent that sought to protect a person's "sensitive financial and health information" from identity theft or fraud, the court questioned how the exemption furthered that goal. Nonetheless, the court concluded that the broad language as it currently existed was within the power of the Legislature and the constitutionality of the statute had not been raised.

The plaintiffs did not appeal the order on summary judgment. Instead, they moved to declare section 624.23 unconstitutional in violation of Article I, section 24 of the Florida Constitution and *Halifax*. The trial court ultimately agreed with the plaintiffs, declaring sections 624.23(1)(b)7. and (2) unconstitutional for the following reasons. Prohibiting disclosure of the information at issue did not "further the stated purpose of the law." The statute

---

[2] "Consumer" is defined to include "[a] prospective purchaser, purchaser, or beneficiary of, or applicant for, any product or service regulated under the Florida Insurance Code, and a family member or dependent of a consumer." § 624.23(1)(a)1., Fla. Stat. (2016).

and the public necessity statement did not contain any thoroughly articulated public policy setting forth why this information needed to be exempt to prevent fraud or theft or to protect a person's financial interests. The statute was overbroad to the extent it prohibited disclosure of information such as names and addresses. Finally, the court questioned the disparate treatment between information withheld when a consumer requested to participate in the programs as opposed to disclosed when an insurer requested to participate. The court held the exemption was broader than necessary to accomplish the stated purpose of the law and directed the Department to furnish the plaintiffs the requested records.

The Department thereafter moved for clarification on whether the court intended to declare the statute facially unconstitutional or unconstitutional as-applied. The trial court entered a clarifying order holding the sections were unconstitutional "only as applied to the personal identifying information, including names and addresses, of consumers requesting to participate in the defendant's residential property mediation and neutral evaluation programs." On appeal, the Department argues the trial court erroneously applied the two-pronged test to find the statute unconstitutional. We agree and reverse.

### *Constitutionality of the Statute*

Although the trial court's clarifying order used the language "as applied," the scope of its order amounted to a facial invalidation of a portion of the statute in that it reads to generally apply to all future requests involving "personal identifying information," not just to the particular circumstances in this case. The constitutionality of a statute is a question of law reviewed *de novo*. *Crist v. Ervin*, 56 So. 3d 745, 747 (Fla. 2010). The statute comes to the Court clothed with a presumption of constitutionality, and any doubt about its validity must be resolved in favor of constitutionality where reasonably possible. *Campus Commc'ns, Inc. v. Earnhardt*, 821 So. 2d 388, 392 (Fla. 5th DCA 2002); *Halifax*, 724 So. 2d at 570.

Under Article I, section 24 of the Florida Constitution, the public has a constitutional right of access to public records and meetings. Article I, section 24(c) authorizes the Legislature to

4

create exemptions to these rights by general law passed by two-thirds vote of each house. In order for legislatively created exemptions to be valid, the exemption "shall state with specificity the public necessity justifying the exemption and shall be no broader than necessary to accomplish the stated purpose of the law." Art. I, § 24(c), Fla. Const. This "exacting constitutional standard" is the two-pronged test we must apply to section 624.23. *Halifax,* 724 So. 2d at 569-70.

## *Specificity*

The exemption here, formerly section 627.311, Florida Statutes (2002), originally included language providing the exemption did not include "the name and address of an inquirer or complainant to the department or the name of an insurer or other regulated entity which is the subject of the inquiry or complaint." In 2007, the Legislature amended the exemption to its current version[3] wherein the language allowing for the disclosure of names and addresses was removed. The 2007 public necessity statement for section 624.23 stated the exemption was a public necessity in order to protect an individual's "sensitive financial and health information" and limiting disclosure of personal financial information, to which an individual had an expectation of privacy, was necessary because the information "could be used for fraudulent and other illegal purposes, including identity theft, and could result in substantial financial harm." Ch. 2007-70, § 2, Laws of Fla.

We agree with the Department that the public necessity statement is sufficiently specific to justify the exemption. *See Campus Commc'ns*, 821 So. 2d at 392. It is logical that disclosure of personal identifying information could be used for fraud or identity theft, especially when disclosed in this context where the entity requesting the information also knows that a consumer has an insurance policy and has been involved in a dispute with an insurance company. The Legislature stated a specific justification – prevention of fraud and identity theft as well as protection of a

---

[3] A subsequent 2012 amendment added language that is not relevant to this appeal.

person's privacy – that justified denying public access to personal financial information. The public necessity statement also explained that disclosure of this information could be used for fraudulent and other illegal purposes, including identity theft, and could result in substantial financial harm. While the trial court may have disagreed that prohibiting disclosure of name and address information furthered the public necessity of fraud and identity theft prevention, that inquiry was not in its purview. Instead of considering the specificity of the public necessity statement itself, the trial court improperly delved into policy considerations behind its inception and disagreed that including names and addresses as confidential and exempt information furthered the Legislature's purpose. This was outside of the trial court's scope of review. *See Bush v. Holmes*, 919 So. 2d 392, 398 (Fla. 2006) (recognizing the general rule that it is not the court's role to reweigh competing policy concerns underlying a legislative enactment).

Unlike the public necessity statement challenged in *Halifax*, the public necessity statement here is specific enough to justify the exemption. In *Halifax*, the Court found the public necessity statement lacked specificity in that it only explained that the disclosure of "critical confidential information" regarding "strategic plans," neither of which term was defined, would make it "exceptionally difficult" for public hospitals to effectively compete in the marketplace against private hospitals. 724 So. 2d at 570. In contrast here, "personal financial and health information" is defined, and the public necessity statement articulates a justification for prohibiting its disclosure that involves prevention of certain crimes against consumers. *Cf. Bryan v. State*, 753 So. 2d 1244, 1251 (Fla. 2000) (finding public necessity statement supporting exemption for records identifying individuals involved in death penalty executions was sufficiently specific where the Legislature detailed that disclosure of this information would jeopardize the individual's safety and welfare by exposing them to potential harassment, intimidation, and harm). In order to be constitutional under Article I, section 24(c), the Legislature had to articulate a specific purpose justifying the exemption. The Legislature did just that; therefore, section 624.23 satisfies the first prong for constitutionality.

6

## *Overbreadth*

The second prong of inquiry is whether the exemption is overbroad. In *Halifax*, the exemption was overbroad because it created a "categorical exemption," which was undefined, thus allowing it to include more information than necessary to accomplish the exemption's purpose. 724 So. 2d at 570 (quoting the lower court's order). The plaintiffs make a similar assertion here. That is, by amending the exemption to broadly define "personal financial information," the Legislature improperly created a categorical exemption that captured personal identifying information that should not be exempt because it was not exempt under the previous version of the statute and because prohibiting its disclosure does not accomplish the stated purpose of the law. We disagree.

The plain language of the exemption clearly defines "personal financial and health information" to include seven subsets, including "[t]he existence, identification, nature, or value of a consumer's interest in any insurance policy, annuity contract, or trust." § 624.23(1)(b)7., Fla. Stat. (2016). Unlike the exemption in *Halifax*, which exempted all public meetings discussing written strategic plans, the scope of the exemption here is limited as to content, with the relevant terms and circumstances being defined.

Moreover, even if the trial court could properly consider whether names and addresses should or should not be included under the umbrella of the exemption, the Legislature already decided that question. The 2007 amendment to the exemption explicitly removed the previous language stating names and addresses were not subject to the exemption. The plaintiffs argue that there is nothing to suggest the Legislature intended to include names and addresses under "personal financial and health information" or knew that the 2007 amendment to the statute would have the present effect. Despite any suggestion of error, the Legislature must be presumed to know the action it is taking when amending a statute. *Bd. of Tr., Jacksonville Police & Fire Pension Fund v. Lee*, 189 So. 3d 120, 125 (Fla. 2016) ("When a statute is amended to change a key term or to delete a provision, 'it is presumed that the Legislature intended it to have a meaning different from that accorded to it before the amendment.'") (citing

7

*Carlile v. Game & Fresh Water Fish Comm'n*, 354 So. 2d 362, 364 (Fla. 1977)). In 2007, the Legislature made the decision to remove the language stating the exemption did not apply to name and address information. The Legislature was then free to define the term "personal health and financial information" as it saw fit.

We decline the plaintiffs' invitation to speculate as to the reason for the disparate treatment of information when a consumer requests to participate in the programs as opposed to when the request comes from an insurer. If anything, this supports the argument that the Legislature intentionally drafted the exemption no broader than necessary. Our inquiry is not whether the Legislature has taken all steps necessary to protect this type of information anywhere it may exist. Nor can we speculate about any unspoken justification for the law. Rather, we have been asked to review the trial court's determination that sections 624.23(1)(b)7. and (2) are unconstitutional. We find that section 624.23 satisfies the two-pronged test for constitutionality under Article I, section 24(c) and *Halifax* and reverse the order on appeal.

REVERSED.

KELSEY and M.K. THOMAS, JJ., concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

Dustin William Metz and Katie Beth Privett, Senior Attorneys, and Gregory D. Venz, Deputy General Counsel, Tallahassee, for Appellants.

Raymond T. Elligett, Jr., and Amy S. Farrior of Buell & Elligett, P.A., Tampa; Matthew R. Danahy and Howard William Weber of Danahy & Murray, P.A., Tampa; Alexander Scott Dennison of Dennison Law, Sarasota; and Ryan Martin Bennett of Bennet Legal, Bradenton, for Appellees.